IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2002

## STATE OF TENNESSEE v. RICHARD WARREN

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-49712    James K. Clayton, Jr., Judge**

────────────

**No. M2001-02139-CCA-R3-CD - Filed February 14, 2003**

────────────

The appellant, Richard Warren, pled guilty in the Rutherford County Circuit Court to two counts of aggravated sexual battery. The trial court sentenced the appellant on each offense to eleven years incarceration in the Tennessee Department of Correction. On appeal, the appellant contends that the trial court misapplied enhancement and mitigating factors in determining his sentences. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Gerald L. Melton (on appeal) and Russell N. (Rusty) Perkins (at trial and on appeal), Murfreesboro, Tennessee, for the appellant, Richard Warren.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The appellant was indicted by the Rutherford County Grand Jury on five counts of rape of a child and five counts of aggravated sexual battery. The offenses involved two young girls, S.P., a six-year-old, and A.M., a seven-year-old.[1] On April 30, 2001, the appellant and the State entered into a negotiated plea agreement which provided that the appellant would plead guilty to one count of the aggravated sexual battery of S.P. and one count of the aggravated sexual battery of A.M., Class B felonies. The remaining counts against the appellant were dismissed. The agreement

---

[1] It is this court's policy to refer to minor victims of sexual crimes only by their initials.

further stipulated that the trial court would determine the length of the appellant's sentences, that the sentences would be served concurrently.

At the sentencing hearing, the State called Tara Cannon of the Tennessee Department of Probation and Parole. Cannon prepared the appellant's presentence report. Cannon testified that in preparing the report she discovered that the appellant had three previous misdemeanor convictions for passing worthless checks. Cannon also noted that the presentence report included victim impact statements from the mothers of the victims. In the victim impact statements, both mothers asserted that their children's schoolwork began to suffer as a consequence of the appellant's abuse. Both victims were undergoing therapy and suffered from mood swings. Cannon also read to the court a letter written by S.P.'s mother. The letter, which was addressed to the appellant, detailed the continuing psychological injuries to S.P. as a result of the offense. On cross-examination, Cannon acknowledged that the sixty-one-year-old appellant informed her that he is legally blind without his glasses, he has experienced two episodes of congestive heart failure, and he has arthritis, gout, and pyorrhea of the gums.

Angie Phillips, A.M.'s mother, testified that the appellant was babysitting A.M. at the time of the offense. She asserted that A.M. was no longer doing well in school and she refused to go to her grandfather's house, where the appellant was living at the time of the offense. A.M. was going to therapy, but would not hug her grandfather or stepfather and had begun to "act out" in school. Phillips also stated that A.M. was afraid of men. Additionally, A.M. had started sleepwalking and wetting the bed.

At the conclusion of the sentencing hearing, the trial court found the presence of the following enhancement factors: (4) the victims were particularly vulnerable because of age and (15) the appellant abused a position of trust in the commission of the offense. See Tenn. Code Ann. § 40-35-114(4) and (15) (1997).[2] The trial court also noted that the appellant had three prior misdemeanor convictions. The appellant, citing these misdemeanor convictions, asked that his limited criminal history be considered in mitigation. The trial court noted the appellant's criminal history, and ultimately sentenced the appellant to eleven years incarceration for each offense. The appellant timely appealed his sentence.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). However, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the trial court misapplied certain enhancement factors and

---

[2] As of July 4, 2002, the statutory enhancement factors have been renumbered. Tenn. Code Ann. § 40-35-114 (Supp. 2002). However, in the instant case, we will use the numbering of the 1997 version of Tennessee Code Annotated section 40-35-114.

because the record does not demonstrate that the trial court considered the sentencing principles, our review will be de novo.

In conducting its de novo review, this court, like the trial court, will consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102 and -103 (1997), and -210 (Supp. 2002); see also Ashby, 823 S.W.2d at 168. The burden is on the appellant to demonstrate the impropriety of his sentences. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The appellant, a Range I offender, pled guilty to two Class B felonies. "The presumptive sentence for a Class B . . . felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). Therefore, the presumptive sentence for each of the appellant's convictions is eight years, the minimum sentence for a Class B felony. However, if there are enhancement but no mitigating factors, then the sentence may be set above the minimum in that range but still within the range. Id. at (d). If there are both enhancement and mitigating factors, a court should begin at the presumptive sentence and enhance for the enhancement factors then reduce as appropriate for the mitigating factors. Id. at (e).

The appellant complains that the trial court erred in "failing to properly weigh and apply" mitigating and enhancement factors. In sentencing the appellant, the trial court observed:

> Certainly, the parents put their trust in the Defendant to take care of the victim, and that puts him in a position of trust. Whether it's right or wrong, it puts him in that position.
>
> Although I know that the age of the child is required to be convicted of aggravated sexual battery unless there was serious bodily injury where there could have been over the age of 13, but in this particular instance, one of the children was six years of age. I think that certainly puts them in more of –or was it seven years of age? I believe it may have been seven years of age. But it's still a lot younger. Certainly, she wouldn't have known much about what was going on as an older child might have.
>
> I do find that those are aggravating factors. Of course his prior record has got three convictions from back when he was 43 years old, misdemeanors apparently, in North Carolina. I understand there is a separate warrant that's been outstanding since about the same time that has never been served on a bad check or worthless check

-3-

presented to Sears Roebuck. . . . So I do feel that 11 years is the proper sentence.

The appellant contends that the trial court erred in considering the age of the victims in sentencing the appellant because the victims' ages were elements of the charged offenses. A sentence may be enhanced if "[a] victim of the offense was particularly vulnerable because of age." Tenn. Code Ann. § 40-35-114(4). The appellant pled guilty to aggravated sexual battery of a victim who was less than thirteen (13) years of age. Tenn. Code Ann. § 39-13-504(a)(4) (1997). Nevertheless, our supreme court has held that although age is an essential element of aggravated sexual battery involving a victim under the age of thirteen (13), enhancement "factor (4) may be used if 'circumstances show that the victim, because of [the victim's] age or physical or mental condition, was in fact, particularly vulnerable.'" State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996) (quoting State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993)). Specifically, "the factor may be used to enhance sentences when a victim's natural physical and mental limitations renders the victim particularly vulnerable for his or her age because of an inability to resist, a difficulty in calling for help, or a difficulty in testifying against the perpetrator." Id.; see also State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). In the instant case, we agree with the appellant that the State presented no specific evidence in support of the application of this enhancement factor. Thus, we conclude that the trial court erred in applying this factor to enhance the appellant's sentence.

The appellant also argues that insufficient evidence supports the application of enhancement factor (15), which provides that a sentence may be enhanced if "[t]he defendant abused a position of public or private trust." Tenn. Code Ann. § 40-35-114(15). The application of enhancement factor (15) "requires a finding, first, that [the appellant] occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, [or] coach are but a few obvious examples." Kissinger, 922 S.W.2d at 488. Moreover, application of this factor

> does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith. If the evidence supports that finding, then the court must determine whether the position occupied was abused by the commission of the offense.

Id.; see also State v. Gutierrez, 5 S.W.3d 641, 645 (Tenn. 1999).

At the sentencing hearing, Phillips testified that the appellant was babysitting her young daughter, A.M., at the time of the offense. Accordingly, we conclude that A.M.'s parents entrusted her to the appellant's care and, when the appellant was supposed to ensure her welfare, he instead used the opportunity to sexually abuse A.M. Therefore, this enhancement factor is applicable to the conviction for the aggravated sexual battery of A.M. Furthermore, the presentence report also reflects that S.P. maintained that the appellant was babysitting her and A.M. at the time he sexually abused S.P. Thus, enhancement factor (4) is also applicable to the appellant's conviction for the aggravated sexual battery of S.P.

-4-

The appellant also argues that the trial court should have considered his "lack of criminal history" as mitigation pursuant to Tennessee Code Annotated section 40-35-113(13) (1997). We acknowledge that the appellant has no history of felony convictions; however, he does have three prior misdemeanor convictions. We do not consider this to be a "lack of criminal history." To the contrary, we conclude that the appellant's previous convictions may be used to enhance the appellant's sentences for both convictions under Tennessee Code Annotated section 40-35-114(1), which provides that a sentence may be enhanced if "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." See State v. John D. Cooke, III., No. W1998-01767-CCA-R3-CD, 1999 WL 1531347, at *14 (Tenn. Crim. App. at Jackson, Dec. 28, 1999).

Moreover, in conducting our de novo review, we note the existence of an enhancement factor not applied by the trial court. See State v. Winfield, 23 S.W.3d 279, 281 (Tenn. 2000) (stating that "an appellate court conducting a *de novo* review is not precluded from applying an enhancement factor that was not applied by the trial court"). We conclude that "[t]he personal injuries inflicted upon . . . the victim [were] particularly great." Tenn. Code Ann. § 40-35-114(6). Our court has previously "construed the legislative intent in the term 'personal injuries' as broad enough to include not only physical harm, but also severe emotional injuries and psychological scarring." State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995) (quoting State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994)). For example, enhancement factor (6) has been applied in sexual abuse cases when the victim "suffered depression, anxiety, and other emotional problems in addition to their physical injuries[;] . . . however, the record must indicate that [the victim's] psychological injuries were particularly great before factor (6) can be applied." Id.

In a victim impact statement,[3] A.M.'s mother, Angie Phillips, related that as a consequence of the offense, A.M. had been attending therapy for approximately ten months. A.M. had begun to sleepwalk, wet the bed, and have nightmares. She also refused to sleep by herself. Moreover, Angie Phillips stated that A.M. refused to hug her father or her brother and would not talk to any man. At the sentencing hearing, Angie Phillips testified that A.M. had begun to do poorly in school and "act out."

Furthermore, in another victim impact statement, S.P.'s mother, Beverly Phillips, asserted that S.P. also was receiving therapy and "will most likely be there for a long time." S.P. "went from being a straight A student to C's and one F." S.P. also suffered from unpredictable mood swings and nightmares. In addition, since the offense, S.P. "stay[ed] in her room constantly," and was often angry and violent. Accordingly, because of the psychological injuries suffered by the victims, enhancement factor (6) is applicable to both offenses. See State v. Arnett, 49 S.W.3d 250, 261 (Tenn. 2001).

---

[3] Pursuant to the Victim Impact Statement Act, the Tennessee Department of Correction must afford victims or family members the opportunity to complete a victim impact statement. Tenn. Code Ann. § 40-38-204(a) (1997); see also State v. Moss, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999). Such statement is then incorporated into the presentence report and the trial court must consider the evidence prior to imposing a sentence. Tenn. Code Ann. §§ 40-35-202 and -205(1997).

In sum, we conclude that the presence of three enhancement factors applicable to both offenses and the lack of mitigating factors for either offense supports the trial court's imposition of an eleven year sentence for each convictions.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE